IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| BRIGHTHOUSE FINANCIAL, INC., ) <br> BRIGHTHOUSE SERVICES, LLC, ) <br> BRIGHTHOUSE LIFE INSURANCE ) <br> COMPANY, ) <br>     and ) <br> BRIGHTHOUSE LIFE INSURANCE ) <br> COMPANY OF NY, ) <br> ) <br>     Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> AMERICAN EQUITY INVESTMENT LIFE ) <br> HOLDING COMPANY ) <br>     and ) <br> AMERICAN EQUITY INVESTMENT LIFE ) <br> INSURANCE COMPANY, ) <br> ) <br>     Defendants. ) <br> ) | **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiffs Brighthouse Financial, Inc. ("Brighthouse Financial"), Brighthouse Services, LLC ("Brighthouse Services"), Brighthouse Life Insurance Company ("BLIC"), and Brighthouse Life Insurance Company of NY ("BLICNY") (collectively, "Brighthouse" or "Plaintiffs") bring this action pursuant to 15 U.S.C. §§ 1114 and 1125, North Carolina common law, and North Carolina General Statutes §§ 75-1.1 *et seq.*, seeking injunctive relief and damages against American Equity Investment Life Holding Company ("AEI HoldCo") and American Equity Investment Life Insurance Company ("AEI") (collectively, "Defendants") for trademark infringement, unfair competition, common law trademark infringement, and unfair and deceptive trade practices, and allege as follows:

1

## PARTIES

1. Plaintiff Brighthouse Financial is a Delaware corporation having a principal place of business at 11225 North Community House Road, Charlotte, North Carolina, 28277.

2. Plaintiff Brighthouse Services is a Delaware limited liability company with a principal place of business at 11225 North Community House Road, Charlotte, North Carolina, 28277.

3. Plaintiff BLIC is a Delaware corporation having a principal place of business at 11225 North Community House Road, Charlotte, North Carolina, 28277.

4. Plaintiff BLICNY is a New York corporation having a principal place of business at 285 Madison Avenue, New York, New York, 10017.

5. On information and belief, Defendants AEI HoldCo and AEI are both Iowa corporations with a principal place of business at 6000 Westown Parkway, West Des Moines, Iowa, 50266 and an office located in Charlotte, North Carolina.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a) and (b), and the Lanham Act, 15 U.S.C. §§ 1114, 1121(a), and 1125.

7. This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a) because they are so related to the federal claims over which the Court has original jurisdiction that they form part of the same case or controversy.

8. This Court has personal jurisdiction over Defendants consistent with federal law and N.C. Gen. Stat. § 1-75.4 because Defendants are located in this State and District, regularly and intentionally operate, conduct, engage in, and carry on substantial business activity within this State and District such that they have sufficient minimum contacts in this State and District, and have committed infringing acts against Plaintiffs within this State and District.

9. In particular, on information and belief, Defendants operate an office in Charlotte, North Carolina, which is located within this State and District.

10. On information and belief, Defendant AEI HoldCo specializes in the sale of various annuity products through its wholly-owned operating subsidiaries, including Defendant AEI.

11. On information and belief, Defendants and their employees hold licenses to sell and do sell annuity- and insurance-related products and services in North Carolina. In support of Defendants' sales efforts in North Carolina, Defendants provide North Carolina-specific forms to their customers via their website.

12. On information and belief, Defendants market, advertise, offer for sale, and sell their products and services in this State and District, and thus Defendants voluntarily and purposely place their products and services into the stream of commerce with the expectation that they will be purchased and/or used by consumers within this State and District, including, but not limited to, via their website.

13. Defendants have committed infringing acts against Plaintiffs within this State and District and, as a result of Defendants' unlawful activities, Plaintiffs have experienced harm in this State and District.

14. Venue in the United States District Court for the Western District of North Carolina is proper under 28 U.S.C. § 1391(b). Defendants reside in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims underlying this Complaint occurred in this District, and Defendants are subject to personal jurisdiction in this District.

## FACTUAL BACKGROUND

**A.      Brighthouse's Business**

15.     Headquartered in Charlotte, North Carolina, Brighthouse is one of the largest providers of annuity and life insurance products and services in the United States, serving millions of consumers across the country.

16.     With over two million annuity contracts and life insurance policies in force, Brighthouse's mission is to help people achieve financial security.

17.     Brighthouse offers several different annuity products, all of which are designed to help consumers protect and grow their retirement savings.

18.     Brighthouse was formerly part of MetLife, Inc. ("MetLife").

**B.      Brighthouse's SHIELD Marks**

19.     Since at least as early as 2013 and continuing to the present day, Brighthouse and/or its predecessors-in-interest have continuously used in interstate commerce the mark SHIELD and other SHIELD-formative marks in conjunction with the marketing, advertising, offering for sale, and sale of annuities products and services.

20.     More specifically, starting at least as early as 2013, the former retail business segment of MetLife (later spun off as Brighthouse Financial) used in interstate commerce the marks SHIELD and SHIELD LEVEL SELECTOR in conjunction with the marketing, advertising, offering for sale, and sale of annuities and related products and services.

21.     MetLife assigned to Brighthouse the entire right, title, and interest in and to the marks SHIELD and SHIELD LEVEL SELECTOR, together with the goodwill of the business appurtenant thereto and all rights of action against third parties for past infringement thereof.

22.     The use of the marks SHIELD and SHIELD LEVEL SELECTOR by Brighthouse and/or its predecessors-in-interest has been continuous, without interruption, since 2013.

4

Case 3:24-cv-00810-MOC-SCR   Document 1   Filed 09/06/24   Page 4 of 20

23. Additionally, starting at least as early as 2017, Brighthouse and its predecessors-in-interest have continuously used in interstate commerce the following additional SHIELD-formative marks in conjunction with the marketing, advertising, offering for sale, and sale of annuities and related products and services: BRIGHTHOUSE SHIELD, BRIGHTHOUSE SHIELD LEVEL, SHIELD LEVEL PAY PLUS, and BRIGHTHOUSE SHIELD LEVEL PAY PLUS (collectively, with the marks SHIELD and SHIELD LEVEL SELECTOR, the "SHIELD Marks").

24. Brighthouse has promoted and advertised its annuity products and services offered under the SHIELD Marks to the public at considerable expense, with a particular focus on promoting consumer awareness, recognition, and understanding of these investment products. As a result, consumers recognize the SHIELD Marks and associate them with Brighthouse and its high-quality annuity products and services.

25. For example, Brighthouse has spent millions of dollars marketing, advertising, and promoting its annuity products and services under its SHIELD Marks throughout the United States via national television, radio, and billboard advertising.

26. Brighthouse's SHIELD Marks are also prominently used and displayed on various pages of its website, www.brighthousefinancial.com.

27. Brighthouse further offers consumers a product brochure, which describes in detail its annuity products and services offered under its SHIELD Marks. A copy of the brochure is attached hereto as Exhibit A, and an excerpt is shown below:



28.     Promotion and advertising of the SHIELD Marks in connection with Brighthouse's annuity products and services has resulted in consumer recognition of the shared distinctive term SHIELD across Brighthouse's SHIELD Marks such that consumers recognize the SHIELD Marks and any other mark incorporating the term SHIELD used in connection with annuity products and services as a source-identifier for products and services offered by Brighthouse.

29.     The SHIELD Marks are not only inherently distinctive, but also have acquired particular significance and valuable goodwill as identifying Brighthouse and its annuity products and services by reason of Brighthouse's adoption of the SHIELD Marks and the longstanding, continuous, extensive, and exclusive use of the SHIELD Marks throughout the United States since at least 2013 in connection with the marketing, advertising, offering for sale, and sale of annuity products and services.

30. Through such usage and recognition, Brighthouse has acquired substantial common law rights in and to the SHIELD Marks throughout the United States, which rights extend to the exclusive right to use the SHIELD Marks nationwide in conjunction with annuity products and services.

31. In addition to the common law rights as alleged herein, Brighthouse Services owns numerous U.S. service mark registrations for SHIELD-formative marks (collectively, "SHIELD Registrations"), namely:

| Mark | Reg. No. | Services |
|---|---|---|
| SHIELD | 5,575,874 | Class 36: Issuance and administration of annuities |
| SHIELD LEVEL SELECTOR | 4,633,196 | Class 36: Issuance and administration of annuities |
| BRIGHTHOUSE SHIELD | 5,504,469 | Class 36: Issuance and administration of annuities |
| BRIGHTHOUSE SHIELD LEVEL | 5,596,628 | Class 36: Issuance and administration of annuities |
| SHIELD LEVEL PAY PLUS | 7,038,663 | Class 36: Issuance and administration of annuities; annuity services, namely, account and investment administration and the investment and distribution of annuity funds; financial services, namely, providing an investment option available for index-linked annuities |
| BRIGHTHOUSE SHIELD LEVEL PAY PLUS | 7,038,455 | Class 36: Issuance and administration of annuities; annuity services, namely, account and investment administration and the investment and distribution of annuity funds; financial services, namely, providing an investment option available for index-linked annuities |

True and correct copies of the Certificates of Registration and status pages from the U.S. Patent and Trademark Office's Trademark Status & Document Retrieval ("TSDR") system for the SHIELD Registrations are attached hereto as Exhibits B-1 through B-6.

32. Brighthouse Financial, BLIC, and BLICNY use the SHIELD Marks in commerce in connection with Brighthouse's annuity products and services with the authority of and license

from Brighthouse Services, which controls the nature and quality of the products and services in connection with which the SHIELD Marks are used.

33. The SHIELD Registrations are valid and subsisting, were duly and legally issued, and constitute *prima facie* evidence of the validity of the registered marks, Brighthouse's claim of ownership in the registered marks, and Brighthouse's exclusive right to use the registered marks in commerce in the United States in accordance with Section 7(b) of the Trademark Act, 15 U.S.C. § 1057(b).

34. The SHIELD Registrations also constitute constructive notice of Brighthouse's ownership of the registered marks in accordance with Section 22 of the Trademark Act, 15 U.S.C. § 1072.

35. Moreover, Reg. Nos. 5,575,874; 4,633,196; and 5,504,469 are incontestable under Section 15 of the Trademark Act, 15 U.S.C. § 1065, which is conclusive evidence of the validity of such registrations, Brighthouse's ownership of the registered marks, and Brighthouse's exclusive right to use the registered marks in commerce in the United States in accordance with Section 33(b) of the Trademark Act, 15 U.S.C. § 1115(b).

**C. Defendants' Infringing Conduct**

36. Notwithstanding Brighthouse's prior rights in its SHIELD Marks, Defendants are marketing, advertising, offering for sale, and selling annuity products and services in interstate commerce under several SHIELD-formative marks.

37. In particular, long after the first use of Brighthouse's SHIELD Marks as alleged above, Defendants began marketing, advertising, offering for sale, and selling annuity products and services in interstate commerce under the marks SHIELD SUITE, INCOMESHIELD,

8
Case 3:24-cv-00810-MOC-SCR   Document 1   Filed 09/06/24   Page 8 of 20

BALANCESHIELD, ASSETSHIELD, ESTATESHIELD, FLEXSHIELD, and GUARANTEESHIELD (collectively, the "Infringing Marks").

38. On information and belief, Defendants prominently market, advertise, offer for sale, and sell their INCOMESHIELD, BALANCESHIELD, ASSETSHIELD, ESTATESHIELD, and FLEXSHIELD annuity products and services under the mark SHIELD SUITE, as shown below. Website screenshots demonstrating Defendants' use of those Infringing Marks are attached hereto as Exhibit C.





9

39. Defendants describe the SHIELD SUITE annuity products as "long-term retirement product[s] that have helped many Americans plan for income in retirement and balance their retirement portfolios" by providing "a powerful combination of benefits that allow for potential index-linked growth, principal protection, tax-deferred growth and guaranteed income over a specific period of time – including the option for lifetime income." (*See id.*).

40. Defendants also market, advertise, offer for sale, and sell an annuity product under the mark GUARANTEESHIELD, as shown below:



Website screenshots reflecting Defendants' use of the GUARANTEESHIELD mark are attached hereto as Exhibit D.

41. Defendants describe their GUARANTEESHIELD annuity product as a "long-term retirement product . . . that . . . guarantees principal protection." (*See id.*).

42. On May 12, 2023—approximately ten years after the first use of Brighthouse's SHIELD Marks—AEI filed three U.S. applications for SHIELD-formative marks, namely:

| Mark | Serial No. | Services |
|---|---|---|
| ASSETSHIELD | 97/933,185 | Class 36: Financial services, in the nature of annuity services specializing in retirement solutions and financial stability, namely, issuance, administration and management of fixed and indexed annuities; investment management services; financial asset management services |
| ESTATESHIELD | 97/933,222 | Class 36: Financial services, in the nature of annuity services specializing in retirement solutions and financial stability, namely, issuance, administration and management of fixed and indexed annuities |
| INCOMESHIELD | 97/933,237 | Class 36: Financial services, in the nature of annuity services specializing in retirement solutions and financial stability, namely, issuance, administration and management of fixed and indexed annuities; investment management services; financial asset management services |

43. On November 30, 2023, AEI filed three additional U.S. applications for SHIELD-formative marks (collectively, with applications for SHIELD-formative marks listed in paragraph 42, the "AEI Applications"), namely:

| Mark | Serial No. | Services |
|---|---|---|
| BALANCESHIELD | 98/292,950 | Class 36: Financial services, specializing in retirement solutions and financial stability, namely, in the nature of indexed annuity services, administration and management of fixed and indexed annuities; investment management services; financial asset management services |
| FLEXSHIELD | 98/293,001 | Class 36: Financial services, specializing in retirement solutions and financial stability, namely, in the nature of indexed annuity services, administration and management of fixed and indexed annuities; investment management services; financial asset management services |
| GUARANTEESHIELD | 98/293,074 | Class 36: Financial services, specializing in retirement solutions and financial stability, namely, in the nature of indexed annuity services, administration and management of fixed and indexed annuities; investment management services; financial asset management services |

True and correct copies of the Applications and TSDR status pages for the AEI Applications are attached hereto as Exhibits E-1 through E-6.

44. Defendants did not begin using any of the Infringing Marks in connection with annuity products and services until years after the first use of Brighthouse's SHIELD Marks in connection with the marketing, advertising, offering for sale, and sale of annuity products and services.

45. The Infringing Marks are confusingly similar to Brighthouse's SHIELD Marks. The Infringing Marks all incorporate the distinctive term SHIELD such that the Infringing Marks are confusingly similar to Brighthouse's SHIELD Marks in appearance, sound, connotation, and overall commercial impression.

46. On information and belief, the annuity products and services offered by Defendants under the Infringing Marks are similar, overlapping with, and/or nearly identical to the annuity products and services offered by Brighthouse under its SHIELD Marks. For example, the annuities offered under the marks INCOMESHIELD, BALANCESHIELD, ASSETSHIELD, ESTATESHIELD, and FLEXSHIELD—and collectively offered under the SHIELD SUITE mark—are long-term retirement products that depend on the performance of indices and protect a principal investment (*see* Ex. C), while the annuity offered under the GUARANTEESHIELD mark is another long-term retirement product that guarantees protection of a principal investment (*see* Ex. D). Similarly, Brighthouse offers annuity products under its SHIELD Marks that are long-term financial products that depend on the performance of indices and provide a level of downside protection of the underlying investment. (*See* Ex. A).

47. On information and belief, Defendants market their annuity products and services to individuals planning for or in retirement, just as Brighthouse markets its annuity products and services to individuals planning for or in retirement, such that the annuity products and services offered by the Parties target the same consumers and travel in the same channels of trade.

48. On information and belief, based on Defendants' use of the Infringing Marks, relevant consumers will be confused as to the source of Defendants' annuity products and services such that consumers seeking Brighthouse's annuity products and services heavily advertised and offered under the SHIELD Marks will be misled into believing that Defendants' annuity offerings are associated with those offered by Brighthouse.

49. Defendants' marketing, advertising, offering for sale, and sale of their annuity products and services under the Infringing Marks are intended to misappropriate and trade off of the goodwill in Brighthouse's SHIELD Marks.

50. Defendants' marketing, advertising, offering for sale, and sale of their annuity products and services under the Infringing Marks are likely to cause confusion, mistake, or deception among consumers as to the source, origin, nature, quality, or sponsorship of Defendants' annuity products and services, and/or mislead relevant consumers into believing that Defendants and/or their annuity products and services are affiliated, connected, or associated with Brighthouse and its annuity products and services.

## **COUNT I**
**(Trademark Infringement under 15 U.S.C. § 1114)**

51. Brighthouse incorporates by reference all of the allegations set forth in the preceding paragraphs.

52. Brighthouse Services is the owner of the following U.S. service mark registrations: Reg. No. 5,575,874 for the mark SHIELD; Reg. No. 5,504,469 for the mark BRIGHTHOUSE SHIELD; Reg. No. 4,633,196 for the mark SHIELD LEVEL SELECTOR; Reg. No. 5,596,628 for the mark BRIGHTHOUSE SHIELD; Reg. No. 7,038,663 for the mark SHIELD LEVEL PAY PLUS; and Reg. No. 7,038,455 for the mark BRIGHTHOUSE SHIELD LEVEL PAY PLUS. Such registrations and Brighthouse's rights in the registered SHIELD Marks are valid and enforceable,

and Brighthouse has the exclusive right to use in commerce the registered SHIELD Marks in connection with annuity products and services.

53. Defendants' use of the Infringing Marks as alleged herein constitutes trademark infringement under 15 U.S.C. § 1114(1).

54. On information and belief, Defendants' actions forming the basis of this Complaint are willful, intentional, malicious, and done with knowledge of the continuing goodwill represented by and associated with Brighthouse's SHIELD Marks and its exclusive proprietary rights therein, and with the knowledge that these actions are likely to confuse, mislead, and deceive the public.

55. Defendants have profited and will continue to unfairly profit and otherwise benefit from their infringing actions.

56. Brighthouse has been and will be injured as a result of Defendants' wrongful conduct, and Defendants' bad-faith and willful conduct makes this case exceptional. Brighthouse is thus entitled to recover its actual damages, any profits that Defendants may have already earned, treble damages, costs of litigation, and attorneys' fees pursuant to 15 U.S.C. § 1117.

57. Defendants' wrongful conduct has caused and will continue to cause irreparable harm and injury to Brighthouse and its SHIELD Marks and to the valuable goodwill associated therewith.

58. Brighthouse is entitled to a permanent injunction enjoining Defendants' current and future use and registration of the Infringing Marks pursuant to 15 U.S.C. § 1116.

## COUNT II
## (Unfair Competition and Trademark Infringement under 15 U.S.C. § 1125(a))

59. Brighthouse incorporates by reference all of the allegations set forth in the preceding paragraphs.

60. Brighthouse's SHIELD Marks are valid and enforceable, and Brighthouse has the exclusive right to use in commerce the SHIELD Marks in connection with annuity products and services.

61. Brighthouse is the senior user of the SHIELD Marks.

62. The SHIELD Marks and goodwill of the business associated with them in the United States are valuable, distinctive, and have become associated with the high-quality annuity products and services offered by Brighthouse.

63. Defendants' use of the Infringing Marks as alleged herein in connection with annuity products and services is likely to cause confusion or mistake, or to deceive, as to the affiliation, connection, or association of Defendants with Brighthouse, or as to the origin, sponsorship, or approval of Defendants' annuity products, services, or commercial activities by Brighthouse.

64. On information and belief, Defendants' actions have damaged and will damage Brighthouse and its proprietary interest in its SHIELD Marks.

65. On information and belief, Defendants' actions forming the basis of this Complaint are willful, intentional, malicious, and done with knowledge of the continuing goodwill represented by and associated with Brighthouse's SHIELD Marks and its exclusive proprietary rights therein, and with the knowledge that these actions are likely to confuse, mislead, and deceive the public.

66. Defendants have profited and will continue to unfairly profit and otherwise benefit from their infringing actions.

67. Brighthouse has been and will be injured as a result of Defendants' wrongful conduct, and Defendants' bad-faith and willful conduct makes this case exceptional. Brighthouse is thus entitled to recover its actual damages, any profits that Defendants may have already earned, treble damages, costs of litigation, and attorneys' fees pursuant to 15 U.S.C. § 1117.

68. Defendants' wrongful conduct has caused and will continue to cause irreparable harm and injury to Brighthouse and its SHIELD Marks and to the valuable goodwill associated therewith.

69. Brighthouse is entitled to a permanent injunction enjoining Defendants' current and future use and registration of the Infringing Marks pursuant to 15 U.S.C. § 1116.

## COUNT III
**(Common Law Trademark Infringement and Unfair Competition)**

70. Brighthouse incorporates by reference all of the allegations set forth in the preceding paragraphs.

71. Brighthouse's SHIELD Marks are valid and enforceable, and Brighthouse has the exclusive right to use in commerce the SHIELD Marks in connection with annuity products and services.

72. Brighthouse is the senior user of the SHIELD Marks.

73. The SHIELD Marks and goodwill of the business associated with them in the United States are valuable, distinctive, and have become associated with the high-quality annuity products and services offered by Brighthouse.

74. Defendants' unauthorized use in commerce in North Carolina of the Infringing Marks in connection with the marketing, advertising, offering for sale, and sale of annuity products

and services is likely to cause confusion, mistake, or deception among consumers as to the source, origin, nature, quality, or sponsorship of such products and services or as to the affiliation, connection, or association with Brighthouse, or the mistaken belief that Brighthouse authorizes, licenses, or sponsors such use.

75. Defendants' unauthorized use in commerce in North Carolina of the Infringing Marks constitutes trademark infringement and unfair competition in violation of the common law of North Carolina.

76. Defendants' actions have damaged and will damage Brighthouse and its proprietary interest in its SHIELD Marks.

77. On information and belief, Defendants' actions forming the basis of this Complaint are willful, intentional, malicious, and done with knowledge of the continuing goodwill represented by and associated with Brighthouse's SHIELD Marks and its exclusive proprietary rights therein, and with the knowledge that these actions are likely to confuse, mislead, and deceive the public.

78. Defendants have profited and will continue to unfairly profit and otherwise benefit from their infringing actions.

79. Defendants' wrongful conduct has caused and will continue to cause irreparable harm and injury to Brighthouse and its SHIELD Marks and to the valuable goodwill associated therewith.

80. Brighthouse is entitled to a permanent injunction enjoining Defendants' current and future use of the Infringing Marks.

## COUNT IV
**(Unfair and Deceptive Trade Practices under N.C. Gen. Stat. §§ 75-1.1 *et seq.*)**

81. Brighthouse incorporates by reference all of the allegations set forth in the preceding paragraphs.

82. Defendants' actions as alleged herein constitute unfair and deceptive trade acts and practices in violation of N.C. Gen. Stat. §§ 75-1.1 *et seq.*

83. Defendants have profited and will continue to unfairly profit and otherwise benefit from their infringing actions.

84. Such practices have damaged and will damage Brighthouse and its proprietary interest in its SHIELD Marks.

85. Brighthouse is entitled to monetary and injunctive relief pursuant to North Carolina law, including damages, the amount of actual losses caused by Defendants to Brighthouse, lost profits, disgorgement of unfair gains and unjust enrichment benefiting Defendants, attorneys' fees and costs, and treble damages.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues and claims so triable.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that the Court enter judgment against Defendants on each of Plaintiffs' claims, and further request that the Court:

a. Enter a permanent injunction prohibiting Defendants, their employees, officers, directors, affiliated businesses, successors and assigns, and all persons acting by, through, under, or in active concert or in participation with or controlled, either directly or indirectly, by any of them, from using any SHIELD-formative or other mark confusingly similar to Plaintiffs' SHIELD Marks in connection with annuities products or services, and any other conduct

that is likely to cause confusion, mistake, or deception as to Plaintiffs' affiliation, connection, or association with Defendants and the infringing products and services, or as to the origin, sponsorship, or approval by Plaintiffs of Defendants and the infringing products and services, or that will otherwise damage Plaintiffs and their SHIELD Marks;

b.  Enter a permanent injunction prohibiting Defendants, their employees, officers, directors, affiliated businesses, successors and assigns, and all persons acting by, through, under, or in active concert or in participation with or controlled, either directly or indirectly, by any of them, from filing or pursuing registration with any governmental entity, including the U.S. Patent and Trademark Office, of an application for a trademark or service mark that incorporates the Infringing Marks or is otherwise confusingly similar to Plaintiffs' SHIELD Marks in connection with annuities products and services;

c.  Award to Plaintiffs (i) Defendants' profits, (ii) any damages sustained by Plaintiffs, and (iii) the costs of the action;

d.  Enter judgment for a sum above the amount found as actual damages, not exceeding three times such amount;

e.  Award Plaintiffs damages, including treble damages under N.C. Gen. Stat § 75-16;

f.  Award Plaintiffs pre- and post-judgment interest at the maximum rates allowed by law;

g.  Order Defendants to pay Plaintiffs the reasonable costs and attorneys' fees Plaintiffs incur in connection with this action; and

h.  Grant to Plaintiffs such other and further relief as the Court deems just and proper.

Dated: September 6th, 2024.　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　s/ J. Mark Wilson
　　　　　　　　　　　　　　　　　　Kathryn G. Cole
　　　　　　　　　　　　　　　　　　N.C. State Bar No. 39106
　　　　　　　　　　　　　　　　　　J. Mark Wilson
　　　　　　　　　　　　　　　　　　N.C. State Bar No. 25763
　　　　　　　　　　　　　　　　　　MOORE & VAN ALLEN PLLC
　　　　　　　　　　　　　　　　　　100 North Tryon Street, Suite 4700
　　　　　　　　　　　　　　　　　　Charlotte, North Carolina 28202
　　　　　　　　　　　　　　　　　　Telephone: (704) 331-1000
　　　　　　　　　　　　　　　　　　Email: katecole@mvalaw.com
　　　　　　　　　　　　　　　　　　　　　　markwilson@mvalaw.com

　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiffs*
　　　　　　　　　　　　　　　　　　*Brighthouse Financial, Inc.,*
　　　　　　　　　　　　　　　　　　*Brighthouse Services, LLC,*
　　　　　　　　　　　　　　　　　　*Brighthouse Life Insurance Company, and*
　　　　　　　　　　　　　　　　　　*Brighthouse Life Insurance Company of NY*